**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JULIE R. HAMILTON** ) | **CASE NO. 1:09CV260** |
|  ) |  |
|  **Plaintiff,** ) |  |
|  ) |  |
| v.  ) | **MAGISTRATE JUDGE GREG WHITE** |
|  ) |  |
| **COMMISSIONER OF SOCIAL**  ) |  |
| **SECURITY, Michael J. Astrue,**  ) |  |
|  ) | **MEMORANDUM OPINION** |
|  **Defendant.** ) | **AND ORDER** |

Plaintiff, Julie R. Hamilton ("Hamilton") a.k.a. Julie Burgoon, challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for Period of Disability ("POD"), Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court affirms the final decision of the Commissioner.

**I. Procedural History**

On January 27, 2004, Hamilton filed applications for POD, DIB, and SSI benefits alleging a disability onset date of October 13, 2003[1] due to severe back pain, headaches, and depression. Her application was denied both initially and upon reconsideration. Hamilton

---

[1] At the administrative hearing, Hamilton amended her disability onset date to May 1, 2003. (Tr. at 17.)

timely requested an administrative hearing.

On September 12, 2006, an Administrative Law Judge ("ALJ") held a hearing during which Hamilton, represented by counsel, testified. Jonathan Nusbaum, M.D., a medical expert ("ME"), and Carl Hartung, a vocational expert ("VE"), also testified. On April 24, 2007, the ALJ found Hamilton was able to perform her past relevant work and, therefore, concluded she was not disabled within the meaning of the Act. The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied further review.

In this appeal, Hamilton claims that the ALJ's decision is not supported by substantial evidence and that the ALJ applied an incorrect legal standard.

## II. Evidence

**Personal and Vocational Information**

Hamilton was born on February 9, 1966. (Tr. 61.) She has a high school education and past relevant work experience as a general office clerk in a variety of positions, a cashier, and a manager of a fast food restaurant. (Tr. 29, 122.)

**Medical Evidence[2]**

On May 19, 2003, after a visit to a chiropractor for a cervical and lumbar adjustment, Hamilton was admitted to MedCentral Health System for six days due to complaints of a severe headache and back pain. (Tr. 140-157.) Upon discharge, David Subich, M.D., her treating physician, determined she suffered from "spinal headache with cerebrospinal fluid leak, most likely due to aggressive chiropractic manipulation" and "low back pain with right leg radiculopathy." (Tr. 140.) On August 25, 2003, Joseph Stolfi, M.D., of the Mansfield Headache Center examined Hamilton regarding her persistent back and leg pain. (Tr. 158.) He noted that she had "weakness of the anterior tibialis and extensor hallucis on the right, and she has some slight decrease in the anterior portion of her lower leg down into the dorsal surface of the foot as well. These latter findings would seem to indicate at least some involvement of the L5 root." *Id.*

---

[2]As the parties did not present a full factual history, the Court presents a summary of Hamilton's visits with only her treating physicians.

Dr. Stolfi prescribed Neurontin 300 mg. *Id.*

Hamilton next was examined by Michael J. Meagher, M.D., of Neurological Associates, Inc., who said there was no neurosurgical solution, but suggested an orthopedic referral. (Tr. 159-160.) Hamilton was then examined by John McGrail, M.D., an orthopedic specialist. (Tr. 161-162.) After examination, Dr. McGrail noted there is "some sacroiliac arthritis" but no orthopedic problems. (Tr. 161-162.) He also noted that the amount of pain Hamilton was experiencing appeared to be in excess of his physical findings and suggested "some hysteria" may be involved. *Id.*

Shortly thereafter, on November 24, 2003, Hamilton was again admitted to the hospital. (Tr. 191.) While there, Dr. James Wolfe diagnosed a sciatica nerve problem. (Tr. 194.) On December 22, 2003, Hamilton underwent surgery for L5 and S1 radiculopathy by Michael Viau, M.D. (Tr. 163.) On December 31, Dr. Subich discharged her from the hospital with the following diagnoses:

> 1) Severe low back pain with elements of gluteal tear or sacroiliac injury of acute origin.
> 2) Chronic low back pain.
> 3) Headaches.

(Tr. 191.)

On follow-up visits to Dr. Subich, she reported little or no decrease in pain, Dr. Subich further assessed her as having chronic pain and depression. (Tr. 273-275.)

Hamilton was treated with physical therapy and pain medication, but achieved no relief. (Tr. 292-305.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

3

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Hamilton was insured on her alleged disability onset date, October 13, 2003,[4] and remained insured through December 31, 2007. (Tr. 17.) Therefore, in order to be entitled to POD and DIB, Hamilton must establish a continuous twelve-month period of disability commencing between the disability onset date and December 31, 2007. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

After considering the entire record, the ALJ made the following findings regarding Hamilton:

---

[3]The entire five-step process entails the following: First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) and 416.900(d)) (2009). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

[4]Although the ALJ acknowledged that Hamilton amended the disability onset date to May 1, 2003, the initial date of October 13, 2003, was used in the decision. (Tr. 17-18.)

4

1. She has not engaged in substantial gainful activity since May 1, 2003, the amended alleged onset date. (Tr. 17-18.)
2. She has the following severe impairments: chronic pain syndrome related to back pain, cephalgia, depression, and adjustment disorder with depressed mood.
3. She does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
4. She has the residual functional capacity ("RFC") to perform a range of "light" work.  Specifically, she can lift, carry, push and pull 20 pounds occasionally and ten pounds frequently.  She can sit for six hours (in two hour intervals) and stand and/or walk for six hours (in two-hour intervals) in an eight-hour workday.  She is limited to simple, repetitive tasks that do not require high production quotas or strict time limitations.
5. She is capable of performing past relevant work as a general office clerk, cashier, and a manager of a fast food restaurant.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
6. She has not been under a "disability," as defined in the Act from May 1, 2003, through the date of the decision.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003)("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

5

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1996); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 533, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence reasonably support[s] the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

### VI. Analysis

Hamilton contends the ALJ's decision denying benefits is not supported by substantial evidence for several reasons. She asserts that the ALJ did not properly consider the VE's testimony. She also asserts that the hearing transcript contains numerous notations indicating that the recording of the hearing was inaudible during some of the VE's testimony.[5] For this

---

[5]**Original version relied on by the ALJ**:
Hearing Officer:   If I find the testimony here to be credible and supported by the medical evidence of record, do you have an opinion as to whether this individual would be capable of past work or any

reason, Hamilton requested that a certified professional reporter attempt to make a more complete transcript.[6] She relies on this revised transcript to argue that the ALJ did not consider the pertinent parts of the VE's testimony in reaching the decision. (Doc. No. 18.) The

---

|  | (INAUDIBLE) ? |
|---|---|
| Mr. Hartung: | I don't believe that she could do her past work (INAUDIBLE). |
| Hearing Officer: | (INAUDIBLE). |
| Mr. Hartung: | I think that the residual functional capacity, particularly with the sitting, standing, and walking limitations, and the lifting requirements are going to be significant problems. I think that the amount of time that she gets to change positions during the day between sitting, stand, walk, and reclining is also significant, particularly in duration of one to one and a half hours. And I think that another contributing factor would be the headaches that she experiences (INAUDIBLE). |

(Tr. 618.)

[6]**Hamilton's version prepared by the certified professional reporter**:

| Hearing Officer: | If I find the testimony here to be credible and supported by the medical evidence, do you have an opinion as to whether this individual would be capable of past work, or any other work? |
|---|---|
| Mr. Hartung: | I don't believe that she could do her past work, and I also don't believe that she could do any other work. |
| Hearing Officer: | And why is that? |
| Mr. Hartung: | I think that the residual functional capacity particularly with the sitting, standing and walking limitations and the lifting requirements are going to be significant problems. I think that the amount of time that she has to change positions during the day from sitting to stand, walk and climbing is also significant, particularly in durations of one to one and a half hours. And I think another contributing factor would be the headaches she experiences. |

(Doc. No. 18 at 7, 8.)

7

Commissioner acknowledges the numerous inaudible portions of the hearing record and submitted a supplemental certified copy of the transcript as well.[7] (Tr. 624-674.)

Hamilton argues that her version of the transcript sets forth the VE's testimony that was ignored by the ALJ. (Doc. No. 21 at 7.) She contends that an ALJ must consider all of the evidence and explain why any evidence is rejected with clear and convincing reasons for doing so. Hamilton alleges the ALJ simply ignored that portion of the VE's testimony where the VE stated that Hamilton was incapable of working. *Id.* Hamilton argues that the appropriate remedy is to reverse the decision without remand, as proof of disability is overwhelming. The Commissioner asserts that there is enough "audible information to understand the most critical elements of the vocational expert's testimony at issue. . ." and to affirm the ALJ's decision.

In all three transcripts, the VE states that considering the ALJ's first hypothetical, which included the physical limitations found by the ME, Dr. Nusbaum, Hamilton could perform her past general office clerk job, particularly the storage company position. (Tr. 616, 668, Doc. No.

---

[7]**The revised version submitted by the Commissioner**:

| | |
|---|---|
| Hearing Officer: | If I find the testimony here to be credible and supported by the medical evidence of record, do you have an opinion as to whether this individual would be capable of past work or any (INAUDIBLE)? |
| Mr. Hartung: | I don't believe that she could do her past work (INAUDIBLE). |
| Hearing Officer: | (INAUDIBLE). |
| Mr. Hartung: | I think that the residual functional capacity, particularly with the sitting, standing, and walking limitations, and the lifting requirements are going to be significant problems. I think that the amount of time that she gets to change positions during the day between sitting, stand, walk, and reclining is also significant, particularly in duration of one to one and a half hours. And I think that another contributing factor would be the headaches that she experiences (INAUDIBLE). |

(Tr. 670).

18 at 5.) When given a second hypothetical, adding psychological limitations from a consultative exam done by Dr. Schonberg, Ph.D., the VE testified that Hamilton would remain capable of performing the office clerk job. (Tr. 617, 669, Doc. No. 18 at 6.) All three transcripts agree that the VE found Hamilton incapable of performing past work if full credit is given to all the hearing testimony. Hamilton's version goes further, indicating that after crediting all testimony, the VE would allow for no work to be performed at all. (Doc. No. 18 at 7, 8.) Because of the numerous problems with the quality of the record, the Court will consider whether remand is necessary.

Federal courts have remanded cases based on the inaudibility of an administrative hearing record. *See Pratts v. Chater*, 94 F.3d 34 (2d Cir. 1996); *Mullen v. Sec'y of Health & Human Serv.*, 878 F.Supp. 682 (D. Del. 1995). In *Pratts*, a portion of the medical testimony was not transcribed. 94 F.3d at 37. The *Pratts* Court concluded that this omission was significant and therefore "the ALJ did not, and indeed could not, decide Pratt's claim with the benefit of a complete and accurate record." *Id*. The *Pratts* Court held that the denial of disability benefits was not supported by substantial evidence. *Id*. In *Mullen*, the court found good cause for remand when three minutes of a twelve minute hearing were not transcribed because of inaudibility. 878 F.Supp at 683.

Further, the ALJ must consider all the evidence, and indicate what evidence is rejected and why. *See Lenon v. Apfel*, 191 F.Supp.2d 968 (W.D. Tenn. 2001); *Plummer v. Apfel*, 186 F3.d 422, 429 (3d Cir. 1999). Moreover, the Sixth Circuit has ruled that, where the ALJ has not properly relied upon evidence in the record, a remand is warranted only when such evidence is "material." *Young v. Sec'y of Health & Human Serv.*, 925 F.2d 146, 149 (6th Cir. 1990). In *Young*, the plaintiff argued that the Magistrate Judge failed to consider a psychiatric report present in the record. The Sixth Circuit held, however, that because the evidence was not "material," a remand was not warranted. *Id*.

Similarly, the Sixth Circuit has held that remand is warranted for consideration of new evidence, not present in the record, only when the evidence is "material." *See Oliver v. Sec'y of Health & Human Serv*., 804 F.2d 964, 966 (6th Cir. 1986). Thus, a plaintiff must demonstrate

9

that the evidence, whether new, or erroneously excluded, is material to warrant a remand.  To prove materiality, a plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore v. Sec'y of Health & Human Servs*., 865 F.2d 709, 711 (6th Cir. 1988).  According to the Sixth Circuit, evidence which is  "cumulative," or present in the record, is not material.  *Young*, 925 F.2d at 149; *see also Ross v. Barnhart*, 2001 WL 1249332, Case No. 3:00cv7020, *7 (N.D. Ohio Sept. 6, 2001).

Here, Hamilton has not demonstrated that there was a reasonable probability that the ALJ would have reached a different disposition if she had considered Hamilton's version of the hearing.  There is no dispute that the VE, in responding to the first two hypotheticals, testified that Hamilton is capable of performing her past relevant work.  There is also no dispute that had the ALJ credited all the testimony, including all of Hamilton's, the VE's conclusion would, at a minimum, have prohibited the finding that past relevant work could be performed.  To the contrary, the decision clearly states that the ALJ found Hamilton's credibility lacking:

> After considering the evidence of record, it is found that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> * * *
>
> The claimant's description of the symptoms is unusual, and is not typical for the impairments which are documented by medical findings in this case.  Her description of the severity of the pain has been so extreme as to appear implausible, especially considering her daily activities.

(Tr. 22, 26.)  The Court concludes that since the ALJ did not find the testimony to be credible and supported by the medical evidence of record, the dispute as to the VE's answer to the final hypothetical is not material.

The Court will next consider the challenge of the ALJ's analysis as to whether Hamilton's medical impairments meet or equal a listed impairment.  (Doc. No. 21 at 4.)  Hamilton first offered an analysis of this claim in her reply brief.  The Commissioner contends that because Hamilton did not provide support for this claim in her initial brief, it should be considered waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *Young v.*

10

*Sec'y of Health & Human Servs*., 925 F.2d 146, 149 (6th Cir. 1990); *McMurphy v. City of Flushing*, 802 F.2d 191, 198-99 (6th Cir. 1986); *Lockwood v. Comm'r of Soc. Sec.*, 2008 WL 4290844, W.D. Mich., Sep. 18, 2008.)

A court is under no obligation to scour the record for errors not identified by a claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug.18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec*., 2009 WL 3153153, at *7 (W.D. Mich. Sep.29, 2009) (*citing McPherson*, 125 F.3d at 995-96) (noting that conclusory claim of error without further argument or authority may be considered waived); *see also Lewis v. Astrue*, 2010 WL 55329, (E.D. Tenn. Jan 4, 2010).

Moreover, it is well-established that a reply brief is not the proper place to raise new arguments. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir.2008); *Rush v. Illinois Cent. R.R. Co.*, 399 F.3d 705, 727 n. 19 (6th Cir. 2005); *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). A reply brief is a plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief. A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments. *Scottsdale*, 513 F.3d at 553. While the Court could easily find that the new arguments raised in Hamilton's reply brief have been waived, a review of the issues on their merits also supports the ALJ's decision.

Hamilton argues that the ALJ erred in the Step 3 analyses as to whether the Listing Impairments of 1.04 (Disorders of the Spine) and 12.04 (Affective Disorders - Mental) have been met. She contends that the ALJ ignored the cross-examination of Dr. Nusbaum, the ME, where he testified that the treating physicians, Dr. Subich, Dr. Wolfe, and Dr. Viau made findings and diagnoses that met the 1.04 Listing. She argues that the ALJ accepted Dr. Nusbaum's testimony over those of her treating physicians. (Doc. No. 29 at 7.)

The ALJ reviewed the medical evidence, including Hamilton's surgical records, MRIs, and x-rays, and concluded that Listing 1.04 was not met as there was no support of nerve root

11

involvement. (Tr. 21.) As to the 12.04 Listing, the ALJ considered the opinion of consultative examiner, Dr. Rosenboom, who felt that Hamilton could not work because of her depression. *Id*. The ALJ noted, however, that Dr. Rosenboom found as follows:

> . . . the claimant showed no signs of psychomotor agitation, gait disturbance, tics, or unusual posturing during the examination. Speech was adequate and clear. Her thoughts flowed without the disruptions of a formal psychotic thought disorder. The claimant denied panic disorder, post traumatic stress disorder, phobias, anxiety, eating disorders, hallucinations, or mania.

*Id*. Moreover, Dr. Rosenboom noted there were no marked limitations. *Id.* The ALJ concluded that Hamilton's mental impairments did not rise to the "B" criteria of the Listing, but she was limited as follows:

> [T]he claimant is "moderately" limited with activities of daily living; "mildly" limited with restrictions of social functioning; and "moderately" limited with restrictions maintaining concentration, persistence, and pace. There have been no episodes of decompensation.

*Id.* The ALJ next determined that Hamilton's mental impairment did not meet the criteria of section C of the Listing. *Id.* The ALJ properly analyzed and found that none of Hamilton's severe impairments, singularly or in combination, met or equaled a Listed Impairment.

Hamilton also argued in her reply brief that the ALJ did not give the proper weight to her treating physicians' opinions. Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."

12

*Blakley*, 581 F.3d at 408.[8]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Here, the ALJ explained that she gave less weight to Dr. Subich's opinions because he relied primarily on Hamilton's subjective reports of symptoms and limitations. (Tr. 27.) She also noted that Dr. Subich's opinion appears to be based in part "on an assessment of

---

[8] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

impairments outside his area of expertise as a family physician." *Id*.  The ALJ, after considering the length and frequency of visits to Dr. Subich, concluded that Dr. Subich's opinion was not supported by the other overwhelming medical evidence and laboratory findings in the record.  *Id.*

Lastly, after finding that chronic pain syndrome was one of Hamilton's severe impairments, the ALJ analyzed how that impacted Hamilton's RFC.  The finding that one of Hamilton's severe impairments was a pain disorder, which is psychologically based, would necessarily involve some crediting of her subjective allegations of pain.  *See Palmer v. Sec'y of Health & Human Servs.*, 770 F.Supp. 380, 385 (N.D. Ohio 1991).  While credibility determinations regarding subjective complaints of pain rest with the ALJ, those determinations must be reasonable and supported by substantial evidence.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (ALJ's RFC finding was flawed and therefore its use in determining claimant could return to her past relevant work was similarly flawed).  Here, the ALJ, considering the pain disorder and Hamilton's complaints of pain, reasonably relied on Dr. Nusbaum's testimony from the hearing stating as follows:

> . . . . the claimant had chronic pain syndrome, depression and cephalgia.  He stated he felt the claimant had a chronic pain disorder because all of the MRIs and EMGs were within normal limits.  Dr. Nusbaum felt there was no evidence of radiculopathy because the object evidence of record showed no nerve root involvement.  He said there was no disc pathology or stenosis that would explain the claimant's complaints of pain.  He cited various exhibits from physicians who commented that the claimant's complaints were in excess to the clinical findings.  (Exhibits 3F, 4F, p.2; 6F, p. 25; and 28F, p.3).  Dr. Nusbaum found no listing was met and felt the claimant was capable of "light work."

(Tr. 28.)  The ALJ stated that Dr. Nusbaum, who testified under oath and was cross-examined, reviewed the complete medical record of Hamilton.  He also saw and heard her testify at the hearing.  The ALJ concluded that Dr. Nusbaum's opinion is supported by the objective medical evidence and by much of the opinion evidence, specifically the opinions from the State Agency reviewing physicians.  (Tr. 29.)

The Court finds, therefore, that the ALJ's RFC determination was reasonable and supported by substantial evidence.

14

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed and judgment is entered in favor of the Defendant.

IT IS SO ORDERED.

                                                                 s/ Greg White
                                                                 United States Magistrate Judge

Date: March 17, 2010